Bridgeford & Co. v. Adams.

BRIDGEFORD & CO. v. ADAMS.

1. CONTRACT OF SALES: *Right to rescind for fraud of purchaser: Ratification.*
    If a vendor of goods, after being advised of the fraud of the purchaser in obtaining credit by misrepresenting his ability to pay, accepts further security instead of demanding a rescision of the contract and a return of the goods, he thereby ratifies the contract and cannot afterwards demand a rescision.

2. SAME: *Same.*
    One who claims to rescind a contract of sale must proceed with reasonable diligence to make such inquiries in reasonable time, as would be prompted by reasonable caution in business transactions.

3. SAME: *Lien for purchase money: Construction of the act of March 9, 1877.*
    The act of March 9, 1877, "for the recovery of purchase money, contracted for property in possession of the purchaser," does not give to the vendor a continuous subsisting lien on the property for the purchase price, but only provides that the property shall not be exempt from the vendor's execution for the debt, and enables the plaintiff in a suit for the purchase money to seize it at once if in the control or possession of the vendee, without alleging the ordinary grounds for an attachment.

4. SAME: *Same.*
    An assignee who takes property not subject to redemption, but to sell and distribute the proceeds among third parties, takes *bona fide.* He cannot hold it against the equity of a third party in the nature of a lien upon the property

Bridgeford & Co. v. Adams.

itself, but in the absence of such lien takes absolutely as against the assignor, for the purposes of the trust, and it is beyond the reach of the assignor's vendor for the purchase money, under the act of March 9, 1877.

APPEAL from *Pulaski* Chancery Court.
Hon. D. W. CARROLL, Chancellor.

*Collins & Balch* for Appellants.

1st. The goods still being in the hands of the assignee, and capable of identification, appellant had, by virtue of the act, March 9, 1877, a statutory lien upon them, which could not be defeated except by the purchase of the goods by a purchaser for value, which the assignee was not. *Act, March 9, 1877; Washburn on Real Estate, Vol. II, p. 36.* That the assignee is not a purchaser for value is clear. *4 Whar. (Penn.) 500; 13 Wend., 570; 5 Cowen, 555; 20 John., 639; 11 Sarg. & R., 377; 3 Rawle, 159; 4 Paige, 215; 18 Iowa 493; 2 Pom. Eq. Jur., Sec. 749; Burrell on Assignments, 2d Ed., 484; 51 N. H., 577.*

2d. Appellants had the right to rescind the contract and reclaim the goods on account of the fraud of the firm. *Sec. 442, Gantt's Dig; 21 Vt., 129; 4 Dana, 211; 51 N. H., 577.*

*T. B. Martin* for Appellee.

1st. Before appellants can recover under the allegations of fraud in the purchase, they must show that Davis & Ketcher had not the intention to pay for the goods when they were purchased. *Benj. on Sales, 4th Am. Ed., p. 557.* The evidence fails to show that they were insolvent when they bought the goods, but if they were, it is not necessarily fraudulent for one who buys goods on a credit to omit disclosing his insolvency. He must buy with a design not to pay for the goods. *Schouler*

*on Pers. Prop., Vol. II, p. 639; 21 Penn., 367; 75 Id., 232.* There *is* no fraud without a dishonest intent. *Bump. Fraud. Conv., 19.* But if appellants were imposed on, they afterwards by their agent affirmed the sale. *99 U. S., 582; Schouler on Pers. Prop., Vol. II, p. 641; 52 N. Y., 90.*

2d. Appellants had no lien on the goods under *Sec. 1, Art. 9, of the Const.,* or *Act, March 9, 1877, p. 47.* At common law the vendor, while in possession, had a lien on the goods sold, but lost it when he parted with possession. *Schouler Pers. Prop., Vol. II, 557–581, et seq.* And it was lost by extending the time for payment. *1 Id., 496; 2 Id., 431; Kent's Com., Vol. II, 638; 33 Me., 141; 1 Mason, 275.*

The constitution and act give no lien, they only prescribe remedies. *Schouler Pers. Prop., Vol. I, p. 501–2.*

But if they had a lien it was lost by the sale to Whiting. The goods were not "in the possession of the vendee."

The assignee was a holder for value. *19 Mo., 17; 2 Mich., 309; 15 Gratt., 153; 19 Gratt., 789; Bump. Fraud. Conv., 334; Burrell on Assignments, 236; 36 Ark., 423.*

EAKIN, J. Davis & Ketcher, were a firm of hardware merchants in Little Rock. On the 26th of February, 1884, Jno. D. Adams filed this bill against them and other parties, alleging: That being in failing circumstances, they had assigned their stock of merchandise, fixtures, notes, accounts, etc., to J. S. Whiting, in trust, to sell and apply the proceeds to their liabilities, in the following order:

1st. A debt of $4,000, owing the Exchange Bank of Little Rock.

2d. A debt of $3,000, owing the Merchants National Bank, of Little Rock.

3d. Certain other indebtedness described in the deed, owing to S. E. Davis and Mary Weigel. These to be paid in full.

The residue to be applied upon all the remaining indebtedness of the firm.

That the trustee was taking an inventory, with the view of filing a bond with the clerk, as required by statute, and selling the stock at public auction. That this would cause a great sacrifice, as much of the stock consisted of agricultural implements, not immediately in demand; whereas, with proper precautions, it might be made to realize a good price. He states that he is a surety of Davis & Ketcher, upon the debt to the Exchange Bank, without indemnity; and that he will suffer loss unless that debt is satisfied out of the assigned property. He therefore asks that a receiver be appointed to take charge of the effects, and to collect such accounts as he can, and report those he cannot collect, to be sold.

Upon filing the bill, the court appointed the assignee receiver, who gave bond as such.

The appellant, Bridgeford & Co., is a corporation under the laws of Kentucky. On the 2d of March, 1884, it filed a petition in the case, showing:

That it is one of the non-preferred creditors; and charging that the firm of Davis & Ketcher, in November, 1883, through Davis, obtained a portion of the stock on hand from them by purchase, under fraudulent representations as to facts and circumstances affecting their solvency and ability; and that a large portion of such goods can be identified in the hands of the receiver. It claims the right to rescind the contract and reclaim the goods, on account of the fraud; and insists also that if it may not do that, it is entitled to a lien upon all the goods it may identify under the act of March 9th, 1877. Their claim is for $2,635.08. Other points are presented by the petition, but these are sufficient to explain the nature of the case, and the contention as to error. There is a prayer for general relief.

Davis & Ketcher answered this petition, denying all the material allegations as to fraud.

Other creditors, it seems, made similar claims, as to goods sold by them for goods which might be identified. By consent the receiver was ordered to proceed with the sales, keeping separate the proceeds of the different lots claimed by the several inter-pleaders, and which might be identified, satisfactorily to his mind. The goods were sold, and the money is now awaiting orders of the court.

Upon hearing, the chancellor refused the prayer of the petitioner, Bridgeford & Co., with costs, giving it, however, a personal decree against Davis & Ketcher for its debt, in the sum of $2,570.52; and directing that the receiver, after deducting costs, should pay out the sums in hand according to the provisions of the deed of assignment. The corporation appealed.

First as to the fraud. The chancellor, in a written opinion, finds that the evidence did not sustain it; and, if there had been fraud originally, the sale was afterwards affirmed.

The sales were made to the firm in November, by the agent of the company of Bridgeford & Co., dealing with Davis. There is some evidence of positive representations as to facts, which, standing alone, would be wholly inconsistent with good faith, but it is to some extent contradicted by other testimony; and some of the representations or remarks are such, or were made at such times, that we cannot infer that they were inducements to the credit given. The impression made upon us by the testimony is that whilst Davis was over sanguine as to the business of the firm, and exaggerated its ability, yet that he is not clearly shown to have spoken or acted with set purpose to obtain credit by fictitious representation. The firm really did meet all its obligations in February, just before the assignment, with which this suit was contemporaneous. Fraud must be shown with a reasonable degree of clearness, and we could not say that the proof of it preponderates here to such an extent as to make it clear that the chancellor erred in his finding.

Bridgeford & Co. v. Adams.

Besides, the decision of the chancellor is strengthened by events occurring after the purchase in November, 1883. Ample time had elapsed for further enquiries into the condition of Davis & Ketcher, when, in February, the agent of the corporation became pressing for security. It is not positively shown that he was then advised actually of the means of the firm, but it is quite certain under the circumstances that men with ordinary business energy and capacity might have become so advised, and it is a fair presumption of fact, that the agent of Bridgeford & Co. was. If he had felt himself to have been misled and deceived, then was the time to have asserted the right of the corporation to rescind the sale, and reclaim the goods. He did not do so, but agreed to be content if the endorsement of the wife of Davis could be got upon some drafts drawn for the debt on the 26th of December. Davis took the drafts, procured the endorsements, and delivered them to the agent. This was a ratification of the original sale. One who claims to rescind a contract of sale, must proceed with reasonable diligence, and make such enquiries in reasonable time as would be prompted by reasonable caution in business transactions. It may be expected that persons negotiating for purchases on a credit will present their affairs in the most favorable light, and their representations made in general terms cannot be relied upon prudently.

*1. Right to rescind sale for fraud. Ratification.*

*2. Same.*

It does not appear from the written opinion that the chancellor took into consideration the point made as to the lien of the vendor company under the act of March 9th, 1877. If it had a lien fixed upon the goods and remaining until payment, or until the goods should have passed into the hands of *bona fide* purchasers for value, and without notice, then the relief sought by the appellant should have been granted independently of the fraud.

This is "an act for the recovery of purchase money, contracted for property in possession of the vendee." The first

*3. Lien for purchase money Construction of the statute.*

section provides that in an action brought for the recovery of the purchase money, of property remaining in the possession of the vendee, the latter shall not include that property as exempt from seizure and sale under attachment or on execution, or other process from any court for the collection of any debt upon claim of the plaintiff. There is nothing in this to create a lien unless we can say that a creditor has a lien upon all the property of his debtor not exempt from execution. The second section provides that in any *such* action, that is, an action to recover the purchase money of a chattel sold on credit, the plaintiff upon petition, duly verified, may at the beginning of the suit, or during its pendency, obtain an order from the court or clerk, directing the officer to take and hold the property subject to the order of the court. This is a statutory process for impounding the chattel to prevent alienation *pendente lite*, and does not imply that a lien exists independently of the process. It is analogous to a specific attachment, which is sometimes given in cases where a previous lien did exist, but the previous lien is in no view essential to support it. The whole matter is statutory and the lien must be found in the plain words, or obvious intent of the statute.

The third section is not relevant to the question now under consideration, and the fourth and last provides that upon showing by the plaintiff that the property has been " disposed of or concealed " so that the order cannot be executed, the court may compel the attendance of defendant, and examine him on oath as to the situation of the property, and enforce its order as in cases of contempt.

As the statute expressly applies only to property remaining in possession of the vendee, it cannot imply a right on the part of the plaintiff to follow the property in the hands of one who in good faith has acquired from the vendee the possession and ownership. Construing the sections together it means that the defendants shall not be allowed to conceal the property, or so

.dispose of it that it cannot be found whilst it still remains constructively in his possession and subject to his control.

An assignee, who takes property not subject to redemption, but to sell the same and distribute the proceeds amongst third parties takes *bona fide*. He is not indeed such an innocent purchaser for value, as to hold against an equity of a third party, which is in the nature of a lien upon the property itself ; but in the absence of any such lien he takes absolutely, so far as the assignor is concerned, and is only under obligations to apply the property to the purposes of the trust. *4. Same:— Bona fide holder from purchaser.*

A case might arise, in which the value of the article might be considerably in excess of the purposes of the trust, leaving a portion of its value to result to the assignor. How far the vendor in such case might be entitled to be heard in equity to claim this surplus against exemptions, or against general creditors, is a question not now made, or important to be determined. It is not the claim here set up, which is for a preference over the creditors named in the deed of assignment.

We think the statute does not give a continuous subsisting lien on property sold on a credit, but only provides that such property shall not, as against the vendor, be exempted from execution ; and enables the plaintiff in a suit for the purchase money to seize it at once if in the possession or control of the vendee, without alleging the ordinary grounds of attachment. We find no error in the decree. *Statute does not give continuous lien, but, &c.*

Affirm.