## HOLMAN *v*. NUTT.

### Opinion delivered October 25, 1915.

SALES—RIGHT TO FOLLOW PROPERTY IN HANDS OF PURCHASER FROM VENDEE.— One C. purchased horses from M. and N. and delivered them to K. to sell for him. M. and N. did not retain vendor's liens. K., becoming involved with one H., sold the horses to H. for a certain consideration. M. and N. then undertook under Kirby's Digest, § 4967, to regain possession of the horses. *Held*, there being no proof of fraud in the sale of the horses to H., and K.'s agency to sell the horses for C. being unrevoked, that M. and N. could not hold the horses as against H., under the statute, which only authorized the sequestration of property when found in the possession or the control of the vendee thereof.

Appeal from Howard Circuit Court; *W. C. Rodgers,* Special Judge; reversed.

*H. P. Epperson* and *W. P. Feazel,* for appellant.

1. Appellees had no lien under §§ 4966-4967, Kirby's Digest, for the purchase price of the horses, as against the claims of third persons. 104 Ark. 130; 52 *Id.* 273; 76 *Id.* 273, 91 *Id.* 218; 52 *Id.* 458; 45 *Id.* 136; 57 *Id.* 13; 64 *Id.* 132. The lien exists only so long as the property is in possession of the vendee. It was error to direct a verdict for appellees.

*D. B. Sain* and *T. D. Crawford,* for appellees.

1. Will Kennedy was a special agent to sell for cash only, and had no authority to sell to Holman to pay a debt. 79 Ark. 401; *Ib.* 408.

2. Holman was not a *bona fide* purchaser. 55 Ark. 47; 41 N. Y. S. 655; 61 S. W. 528; 33 L. R. A. 767.

McCulloch, C. J. The plaintiff, L. C. Holman, instituted this action against Reese Dyer, a constable in Howard County, to recover possession of three horses which said constable had taken from plaintiff's posses-

sion under process issued in two suits previously instituted before a justice of the peace in that county, one by Charles Kennedy and the other by S. L. Nutt against one Mack Craig. Kennedy sold two of the horses in controversy to Craig, and Nutt sold the other one to Craig, and each of said actions against Craig was to recover the respective prices of the horses sold. Each of those parties caused to be issued, at the commencement of his action, an order pursuant to Kirby's Digest, Section 4967, directing the constable to take from Craig, the defendant in those actions, the property sold to him, which was described in the complaints, and to hold said property subject to the orders of the court in those actions. The writs came to the hands of the constable and he took the horses from the possession of the plaintiff, and, as before stated, the plaintiff instituted this action against the constable to regain possession of the horses. Nutt and Kennedy were allowed to intervene and make themselves defendants to this action.

Plaintiff asserts ownership of the horses, and he came in possession thereof under circumstances which he relates as follows: Plaintiff sold to Will Kennedy four mules and some cattle for prices aggregating the sum of $600.00, and took the note of his vendee for the purchase price, reciting that the title was retained by the vendor until the price should be paid in full. Without having paid any of said purchase price, Kennedy shipped the mules purchased from the plaintiff to Kansas City, and also shipped the three horses in controversy, and two others, making five in all. After Kennedy had gotten away with the shipment of stock, plaintiff received information of it and telegraphed to Kansas City and had Kennedy arrested and the carload of stock stopped in the hands of the carrier. Plaintiff followed Kennedy to Kansas City, and, according to his testimony, made a trade with him whereby the latter sold and delivered the five head of horses to plaintiff to compensate him for his damages and expenses of going to Kansas City and recovering his mules, and in payment of the freight on the

whole shipment from Arkansas to Kansas City and back. Plaintiff testified that he paid out about $260.00 in that way. Kennedy gave plaintiff a written order for the delivery of the horses and plaintiff shipped them back to Deirks, Arkansas, and they remained in his possession until the commencement of this suit. Plaintiff testified positively that Kennedy sold him the stock for the consideration named, and that pursuant thereto he took possession of it and shipped it back to Deirks, paying the freight both ways. He admitted on cross-examination, that after he had returned to Arkansas he offered to sell the stock back to Kennedy for the price he had received —that is to say, for the amounts he had paid out, but his testimony was to the effect that it was a purchase of the horses from Will Kennedy in Kansas City, and not an acceptance of possession of the same as a pledge to hold until the freight was paid.

Kennedy testified that Craig turned the horses over to him to ship to Kansas City and to sell, and that he (Kennedy) turned over to Craig a lot of other stock to take to St. Louis to sell. Craig did not appear in the controversy either as litigant or as a witness. Kennedy testified that he did not sell the horses to plaintiff, but merely turned them over to him to hold until he collected the amount paid out on freight, and there is other testimony in the case to the effect that plaintiff turned the stock back to Craig. The court gave a peremptory instruction in favor of the defendants and judgment was rendered accordingly, from which the plaintiff has appealed.

We are of the opinion that the court erred in giving a peremptory instruction. The case should have been submitted to the jury upon the testimony. According to the testimony of the plaintiff, he was in possession of the horses under his purchase from Will Kennedy, whose testimony establishes the fact that he had authority from Mack Craig to sell the horses. It is true there was shown no authority on the part of Kennedy to sell for anything but money, or to sell in discharge of his own obligations, but Craig is not repudiating the sale made by his agent,

and the defendants are not in a position in this action to call into question Kennedy's authority.

The defendants have no lien on the property and did not retain the title as security for the purchase money of the horses when sold. The statute under which they were proceeding for the enforcement of their debts only authorizes the sequestration of a property when found in the possession or the control of the vendee. That statute was construed in the case of *Bridgeford & Co.* v. *Adams,* 45 Ark. 136 where it was held that the "statute does not give to the vendor a continuous subsisting lien on the property for the purchase price, but only provides that the property shall not be exempt from the vendor's execution for the debt, and enables the plaintiff in a suit for the purchase money to seize it at once if in the control or possession of the vendee, without alleging the ordinary grounds for an attachment." In that case it was held that the remedy could not be asserted against a trustee under a deed of assignment from the vendee. The same principle has been subsequently announced in numerous cases decided by this court, it being held that the remedy could not be invoked as against property in the hands of the personal representative of the vendee after the latter's death; (*Blass* v. *Hood,* 57 Ark. 13) or against subsequent attaching creditors (*Fox* v. *Arkansas Industrial Co.,* 52 Ark. 450), or against a receiver for an insolvent corporation (*Clements* v. *Hamilton-Brown Shoe Co.,* 99 Ark. 335). If plaintiff held the property under a fraudulent transfer of the title from Craig, made for the purpose of defrauding his creditors, that might be shown in defense of the action, but there was no attempt to prove that the alleged sale to the plaintiff was fraudulent. (*Neal* v. *Cone,* 76 Ark. 273; *Roach* v. *Johnson,* 71 Ark. 344.)

Reversed and remanded for a new trial.