John YEARGAN and Ovada YEARGAN
*v.* THE BANK OF MONTGOMERY
COUNTY

CA 79-67                                         595 S.W. 2d 704
Court of Appeals of Arkansas
Opinion delivered March 5, 1980
Released for publication March 26, 1980

*Philip M. Clay,* for appellants.

*J. Fred Jones,* for appellee.

MARIAN F. PENIX, Judge. The Bank of Montgomery County sued John and Ovada Yeargan to reform a note and mortgage to recite the intention of the parties in the face amount of $52,316.92 with final payment due on November 6, 1983, in the amount of $22,566.92 rather than the $13,-535.81 as set out in said note and mortgage. The Yeargans allege the Bank made a sole and unique error in the calculation of the interest; that the error is not an error running to the Bank entitling the Bank to reformation.

In September, 1972 the Yeargans borrowed $27,000 to build a home. The agreed upon interest rate was 8%. The term of the note was for ten years and the monthly payments were to be $250. At the end of ten years the balance would become due and payable. The face amount of the note was $36,870.40. In November, 1973 the Yeargans borrowed an additional $5,000. New note and mortgage were prepared by the bank. The same terms of the 1972 note were in the 1973 note. The face amount of $43,535.81 was on the note as well as the Truth in Lending disclosure statement. The balance, or balloon payment, which was due and owing at the end of ten years was listed as $12,875.86.

In September, 1972 the Yeargans purchased credit life insurance from an independent agent in the amount of $30,-000. This was some $3,600 less than the amount owed on the 1972 note. In August, 1976 Mr. Yeargan began experiencing

health problems. He suffered a myocardial infarction in November, 1976 and underwent coronary artery surgery in February, 1977. His doctor states that his prognosis is good for 3 to 5 years. In 1977 he attempted to get credit life for a different debt and was turned down.

In late February, 1978 an audit was made by the FDIC. It was discovered the interest was computed at a rate of 4% rather than at 8%. The interest rate and principal were listed correctly but the interest had been calculated incorrectly. The face amount of the 1973 note should have been $53,-316.92 and the balloon payment should have been $21,-875.86. The bank had no system of checks which were designed to catch errors of this nature. Each year the bank hired independent CPAs to check the bank. They would spot check some 40% of the notes held by the bank. It is not known if this particular note had been checked.

The bank drew up a new note and mortgage and asked the Yeargans to sign it. They refused. The Bank filed suit seeking reformation and the Chancellor granted the reformation. The Yeargans have appealed.

The Yeargans argue three points for reversal. I. Because the Bank violated a legal duty owed to the Yeargans which resulted in the Yeargans' detrimental reliance the Bank should be barred from reformation. II. The error is a unilateral mistake which does not justify reformation. III. The Bank should be equitably estopped from asserting reformation.

The first issue we must resolve is whether or not this was a mutual mistake. If we find this to be a unilateral mistake then the reformation is error. A unilateral mistake cannot be the ground for reformation. Reformation proceeds upon the theory the contract has been made but that it is not correctly reflected in the written instrument. A mutual mistake is one which is reciprocal and common to both parties, each alike laboring under the same misconception in respect to the terms of the written instrument. It is a mistake shared by both parties to the instrument at the time of reducing their agreement to writing. Evidence of mutuality must relate to

the time of the execution of the instrument and show that the parties then intended to say one thing and by mistake expressed another and different thing. In *Weiss et al* v. *Turney,* 173 F. 2d 617 (8th Cir. 1949) [Arkansas case] the court defined a mutual mistake as a mistake which appears to be a mistake by both parties, and by reason of both parties have done what neither intended and each must have labored under the same misconception in respect to the terms of the written instrument. From the record before us we can determine this was a mutual mistake. The Bank and the Yeargans both intended the instrument to reflect the interest at 8%.

Having determined the mistake to have been a mutual one we must look to see whether or not the Bank is barred from reformation.

There is no case law in Arkansas which holds a bank to a legal duty not to make a clerical, scrivener, nor mathematical error. Several jurisdictions (Ala., D.C., Ill., Kansas, Maryland, N. Dak., Ohio, Oregon, and Rhode Island) seem to require a violation of a positive legal duty in order for negligence to be a bar to reformation.

The Bank relies upon an Oklahoma case, *Crabb* v. *Chisum,* 80 P. 2d 653. In this case a promissory note erroneously stated interest from maturity rather than from the date of the loan. The agreement had been from the date of the loan. The note was reformed.

The Yeargans allege they relied upon the mistaken calculation to their detriment. They allege the uninsurability of Mr. Yeargan. There is no evidence the Yeargans have been harmed in any way by the mathematical error. There is nothing in the record indicating the Yeargans would have secured additional credit life insurance. The Yeargans had secured credit life from an independent agent not connected with the loan nor with the bank. Mr. Yeargan has not died. We find no evidence of any harm to the Yeargans.

There is no showing of a positive legal duty owed the Yeargans by the bank which would estop the bank from

reforming the note and the mortgage. The Chancellor correctly allowed the reformation.

Affirmed.