2011 Ark. App. 183

James **HUBBARD**, Appellant

v.

**HOMEBANK OF ARKANSAS,**
Appellee.

No. CA 10–792.

Court of Appeals of Arkansas.

March 9, 2011.

Steven B. Davis, Harrison, for appellant.

Stephen L. Gershner, Little Rock, for appellee.

LARRY D. VAUGHT, Chief Judge.

James Hubbard appeals from the judgment entered by the Circuit Court of Searcy County in favor of HomeBank of Arkansas, finding that Hubbard's interest in cattle proceeds was subordinate to Home-Bank's perfected first lien in the same proceeds. Hubbard argues on appeal that the trial court erred as a matter of law in granting HomeBank "a perfected security interest in the proceeds of [the] sale of cattle to which the bank's debtor did not have title." We disagree and affirm.

In 2000, Hubbard and his friend Jack Simpkins entered into an oral agreement for the sale of Hubbard's cattle and the lease of his farm. Simpkins paid only a portion of the purchase price for the cattle, and Simpkins moved onto Hubbard's farm where the cattle were located. Simpkins and his wife, in July 2007, borrowed in excess of $1.8 million from HomeBank. To secure the repayment of the loan, the Simpkinses executed and delivered to HomeBank security agreements, which among other things, granted HomeBank a lien on all cattle the Simpkinses owned. HomeBank perfected its lien on the cattle by filing financing statements in the Office of the Circuit Clerk of Searcy County, Arkansas. In late 2008, Hubbard learned that Simpkins was not properly caring for the cattle. In January 2009, Hubbard sold the cattle at auction and received proceeds of $56,500. Hubbard deposited the proceeds into his account at HomeBank.

The Simpkinses subsequently defaulted on their HomeBank loans. HomeBank instituted suits against the Simpkinses (to foreclose its security interest) and against Hubbard (to assert a lien upon the proceeds of the cattle sale). The proceeds of the cattle sale were held in Hubbard's account at HomeBank pending a bench trial.

Following the trial, the court entered a judgment on March 5, 2010, finding that the Simpkinses were indebted in excess of $1.8 million to HomeBank; that Home-Bank's loan to the Simpkinses was secured by a perfected lien on the Simpkinses' property, which included cattle; that Hubbard had an unperfected lien in the cattle; and that Hubbard sold the cattle owned by

the Simpkinses and received $56,500 in cattle proceeds. Based on these findings, the trial court concluded that Hubbard's unsecured interest in the cattle proceeds was subordinate to HomeBank's perfected first lien in the proceeds and awarded the proceeds to HomeBank. A judgment including these findings was filed on March 5, 2010, and Hubbard timely appealed on March 25, 2010.

██ ₃Before we can reach the merits of Hubbard's appeal, we must take up Home-Bank's October 6, 2010 motion to dismiss the appeal. In this motion, HomeBank argues that on March 16, 2010, eleven days after the judgment was entered, Home-Bank applied the cattle proceeds from Hubbard's account to the Simpkinses' indebtedness, which satisfied the judgment in full.[1] HomeBank pointed out that Hubbard did not request a supersedeas bond or a stay of the judgment pending appeal.[2] Therefore, HomeBank argues, Hubbard voluntarily satisfied the judgment, rendering the appeal moot. In response, Hubbard denies that he voluntarily paid the judgment and argues that HomeBank transferred the funds out of his account without notice and permission.

In *Lytle v. Citizens Bank of Batesville*, 4 Ark.App. 294, 630 S.W.2d 546 (1982), the appellee argued that the appeal was moot because the appellant had satisfied the judgment. There, the appellant stated that he was unable to post a supersedeas bond due to his financial condition, but when the appellee's attorney indicated that he was going to execute the judgment, appellant borrowed money to satisfy it.

*Id.*, 630 S.W.2d at 547. Appellee claimed that these facts demonstrated that his payment was not voluntary. *Id.*, 630 S.W.2d at 547.

In discussing when a satisfaction of a judgment renders an appeal moot, we stated

Some jurisdictions hold that the payment of a judgment under any circumstances bars ₄the payer's right to appeal. However, in the majority of jurisdictions, the effect of the payment of a judgment upon the right of appeal by the payer is determined by whether the payment was voluntary or involuntary. In other words, if the payment was voluntary, then the case is moot, but if the payment was involuntary, the appeal is not precluded. The question which often arises under this rule is what constitutes an involuntary payment of a judgment. For instance, in some jurisdictions the courts have held that a payment is involuntary if it is made under threat of execution or garnishment. There are other jurisdictions, however, which adhere to the rule that a payment is involuntary only if it is made after the issuance of an execution or garnishment. Another variation of this majority rule is a requirement that if, as a matter of right, the payer could have posted a supersedeas bond, he must show that he was unable to post such a bond, or his payment of the judgment is deemed voluntary....

We adopt the majority rule as the better reasoned rule. Thus, if appellant's pay-

1. HomeBank filed a satisfaction of judgment on October 1, 2010.

2. Rule 8(a) of the Arkansas Rules of Appellate Procedure—Civil provides that a supersedeas is a written order commanding an appellee to stay proceedings on the judgment, decree, or order being appealed from and is necessary to

stay such proceedings. Rule 8(c) provides that when an appellant desires a stay on appeal, he shall present to the court for its approval a supersedeas bond, but it does not require the posting of a bond in order to appeal.

ment was voluntary, then the case is moot, but if the payment was involuntary, this appeal is not precluded. In applying this rule to the facts at bar, we must determine whether the payment made by appellant was voluntary or involuntary. In doing so, *we believe that one of the most important factors to be considered is whether appellant was able to post a supersedeas bond at the time he satisfied the judgment. The record supports the conclusion that he could have done so.*

*Lytle,* 4 Ark.App. at 296–97, 630 S.W.2d at 547 (emphasis added). Based on the majority rule, we dismissed the appeal because there was no evidence in the record that showed that the appellant requested the court to set the amount of a supersedeas bond or that showed his financial inability to pay such cost. *Id.* at 297, 630 S.W.2d at 547. To the contrary, the record demonstrated that the appellant could pay such costs in that he was able to borrow money to pay the judgment in full when faced with the threat of execution of the judgment. *Id.,* 630 S.W.2d at 547. We stated, "[f]or whatever reasons, appellant simply chose to forego his right to request a bond in an effort to stay the trial court's judgment and any subsequent proceedings to enforce it." *Id.* at 298, 630 S.W.2d at 547. Therefore, we held that the appellant's payment was voluntary and dismissed the appeal as moot. *Id.,* 630 S.W.2d at 548.

HomeBank, relying upon *Lytle,* contends that Hubbard's appeal should also be dismissed. It argues that, as in *Lytle,* there is no evidence in the record that Hubbard sought to stay HomeBank's execution of its judgment by seeking a stay or by requesting a supersedeas bond. We agree that Hubbard did not seek to stay the judgment or request a supersedeas bond, but we disagree that these facts are dispositive.

Instead, we liken the instant case to *Reynolds Health Care Servs. v. HMNH, Inc.,* 364 Ark. 168, 217 S.W.3d 797 (2005) and *Ward v. Williams,* 354 Ark. 168, 118 S.W.3d 513 (2003). In *Reynolds Health Care* and *Ward,* after judgments were entered against the appellants, they appealed; however, they failed to post supersedeas bonds, and the judgments were satisfied. *Reynolds Health Care Servs.,* 364 Ark. at 181–82, 217 S.W.3d at 808–09 (judgment was satisfied when the sheriff levied on and later sold the appellant's property); *Ward,* 354 Ark. at 175, 118 S.W.3d at 517 (trial court entered order vesting title to appellee in fee simple absolute). In both cases, the appellees claimed that the appellants' appeals were moot because the judgments were satisfied. The supreme court rejected the appellees' arguments, holding that the judgments were not satisfied voluntarily by the appellants. *Reynolds Health Care Servs.,* 364 Ark. at 182, 217 S.W.3d at 809; *Ward,* 354 Ark. at 182, 118 S.W.3d at 521. The court in these cases, both decided after *Lytle,* acknowledged that no supersedeas bond was filed by either appellant. *Reynolds Health Care Servs.,* 364 Ark. at 182, 217 S.W.3d at 809 (stating that " 'one of the most important factors to be considered' in determining whether a judgment was satisfied voluntarily is whether a supersedeas bond has been filed"); *Ward,* 354 Ark. at 182, 118 S.W.3d at 521. However, the voluntariness of the payment remains a factor to be considered. As stated by the *Reynolds Health Care* court, "the court must still consider as an additional factor the fact that the judgment was only satisfied as the result of the sheriff's levying a writ of execution on [the appellant's] property." *Id.,* 217 S.W.3d at 809.

In the case at bar, Hubbard did not voluntarily pay money to HomeBank to

satisfy the judgment. Unlike the appellant in *Lytle*, Hubbard did not borrow money to pay the judgment. Rather, HomeBank, without notice and authorization, transferred funds out of Hubbard's account. This action was more akin to the involuntary satisfaction of judgments that occurred in *Reynolds Health Care* and *Ward*. Because we hold that Hubbard did not voluntarily satisfy the judgment in this case, we deny HomeBank's motion to dismiss Hubbard's appeal.

On the merits, Hubbard's sole contention is that the trial court erred in granting HomeBank a perfected security interest in the proceeds of the sale of the cattle to which Simpkins had no title.[3] His argument focuses on his point that Simpkins did not have title to the cattle; therefore, HomeBank's perfected security interest could not attach to it. He points to his uncontroverted testimony that according to his oral agreement with Simpkins, the title to the cattle did not pass to him until he had paid for them in full, which he had yet to do. He also points out that Arkansas appellate courts have recognized oral agreements for sale of personal property where the seller retains title to the personal property until the purchase price is paid.[4] He claims that because he had such an agreement with Simpkins, all Simpkins owned was the right to own cattle after he finished paying the purchase price.

When a case is tried by a trial court sitting without a jury, our inquiry on appeal is not whether there is substantial evidence to support the factual findings of the court, but whether the findings are clearly erroneous, or clearly against the preponderance of the evidence. *Pine Meadow Autoflex, LLC v. Taylor*, 104 Ark. App. 262, 264–65, 290 S.W.3d 626, 628 (2009). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, when considering all of the evidence, is left with a definite and firm conviction that a mistake has been committed. *Robinson v. Villines*, 2009 Ark. 632, at 7, 362 S.W.3d 870. However, a trial court's conclusion on a question of law is reviewed de novo and is given no deference on appeal. *Id.* at 7, 870 S.W.3d at 874.

Hubbard's point on appeal focuses on who had title to the cattle. However, title is not material in priority disputes over collateral. Arkansas Code Annotated section 4–9–203(a) (Supp.2009) provides that "[a] security interest attaches to the collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment." This section further provides that one of the three requirements to enforce a security interest against the debtor and third parties with respect to collateral is that "the debtor has rights in the collateral." Ark. Code Ann. § 4–9–203(b)(2) (Supp.2009).[5] Therefore, this section does not require that the debtor, the Simpkinses in this

3. Hubbard does not challenge the finding that HomeBank perfected its lien on the Simpkinses' cattle by filing a financing statement or that HomeBank's perfected security interest trumped Hubbard's unsecured claim.

4. Hubbard cites *Dobbins v. Lacefield*, 35 Ark. App. 24, 811 S.W.2d 334 (1991); *Lake Village Implement Co. v. Cox*, 249 Ark. 733, 461 S.W.2d 108 (1970); *Holman v. Nutt*, 120 Ark. 446, 179 S.W. 811 (1915).

5. The three requirements relevant to the instant case are found in Arkansas Code Annotated section 4–9–203(b)(1)–(3)(A), which provides that a security interest is enforceable against the debtor and third parties with respect to the collateral if (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral; and (3) the debtor has authenticated a security agreement that provides a description of the collateral. There are excep-

case, have title to the collateral in order for the secured party, HomeBank, to enforce its security interest. What is required is that the debtor have "rights in the collateral."

While the UCC does not define "rights in the collateral," in *Wawak v. Affiliated Food Stores, Inc.*, 306 Ark. 186, 812 S.W.2d 679 (1991), our supreme court had the opportunity to construe the term. In *Wawak*, the appellants (sellers of a supermarket) sought declaratory judgment that their perfected security interest in inventory had priority over the perfected security interest in the same inventory of appellee (supermarket supplier) after the buyer declared bankruptcy. Because both parties had perfected security interests, the issue was whose interest was perfected first. Appellants' security interest was perfected in April 1986. And while appellee's security interest was filed in February 1986, appellants claimed that appellee's security interest did not attach at that time because the debtor did not have rights in the inventory to convey in February 1986. *Wawak*, 306 Ark. at 188, 812 S.W.2d at 680. More specifically, appellants argued that while they contracted with the debtor for the sale of the supermarket in January 1986, and the debtor took possession and ran the store in February 1986, the final paperwork completing the sale was not completed until April 1986. *Id.*, 812 S.W.2d at 680.

Our supreme court disagreed, stating: "Possession of the collateral, accompanied by a contingent right of ownership, has been held sufficient for a security interest to attach." *Wawak*, 306 Ark. at 189, 812 S.W.2d at 680–81 (citing *First Sec. Bank of Idaho v. Woolf*, 111 Idaho 680, 726 P.2d 792 (Idaho App.1986)). The court concluded that the debtor had rights in the collateral in February 1986 based upon his possession and operation of the store (in-

cluding his responsibility for profits and losses), from January 1986 to April 1986, when the sales transaction was completed. *Wawak*, 306 Ark. at 188, 812 S.W.2d at 680.

The instant case is very similar to *Wawak*. Hubbard and Simpkins entered into an oral agreement for the sale of the cattle and the lease of a farm in 2000. Simpkins moved onto the property and cared for the cattle until late 2008 or early 2009 when Hubbard sold them. These facts demonstrate that Simpkins had more than mere possession of the collateral. He cared for and maintained the cattle for more than eight years pursuant to an oral sales contract, which established his "rights in the collateral" sufficient for HomeBank to enforce its perfected security interest. Therefore, we affirm the trial court's finding that Hubbard's unsecured interest in the proceeds of the sale of the cattle was subordinate to HomeBank's perfected security interest in the same proceeds.

Affirmed.

GLADWIN and MARTIN, JJ., agree.

---

tions found in Ark.Code Ann. § 4–9–203(c)– (i), but they are inapplicable here.