ROBERT J. GLADWIN, Judge
This appeal involves the sale of nonvoting stock in a family-held corporation, Black, Inc. (Black Inc.), pursuant to a stock repurchase agreement (SRA). Black Inc. and Deborah Dunklin Tipton have filed separate appellate briefs seeking reversal of a series of orders in the Arkansas County Circuit Court that, among other things, confirm the appraisal of appellee George H. Dunklin, Jr.'s nonvoting shares in Black Inc.; order Tipton to purchase Dunklin's nonvoting shares for the price of $15,619,240; and deny Tipton's motion to conduct discovery on the appraisal. Tipton argues that the circuit court erred by (1) denying her permission to conduct discovery; (2) adopting the appraisal; and (3) concluding that the fair market value (FMV) of the stock was $15,619,240 rather than $15,600,000. Black Inc. similarly argues that the circuit court erred in interpreting the SRA and in adopting the appraisal. We affirm.
I. Facts and Procedural History
Jerry Lee Bogard and Rebecca Winemiller offered Dunklin $20,000,000 for his shares in Black Inc. Under the SRA, Dunklin gave notice of his intent to sell, and Tipton elected to purchase the shares. When a dispute arose about the purchase price and the timing and manner for electing to exercise options under the SRA, Dunklin filed his complaint against Black Inc., its shareholders, Bogard, and Winemiller, seeking a declaration of the parties' rights and obligations under the SRA with respect to the offer.[1]
*700 Dunklin attached to his complaint the $20,000,000 offer and the SRA, which provides that if Dunklin should sell his shares, he must first offer to sell them to his children (who waived their rights) and then to his sister, Tipton.[2] The SRA also provides that the FMV of the shares of stock would be by mutual agreement of the selling shareholder and the purchaser. However, if those parties could not agree, FMV would be determined by an appraiser selected jointly by the seller and the purchaser.[3]
Tipton separately answered Dunklin's motion and counterclaimed, also seeking a declaration of the parties' respective rights and obligations under the SRA. Tipton noted that, even though she and Dunklin had agreed on an appraiser, the firm of Stout Risius Ross, Inc. (SRR), Dunklin still disavowed the validity of Tipton's election and asserted that her window to exercise her option had closed. Black Inc. and the remaining shareholders named in the action answered both motions by affirmatively stating that they wished to protect their rights in the event Tipton's election was found to be invalid, and they filed a motion for preliminary injunction, arguing that the purpose of the SRA was to provide for continuity and harmony among the family members in the management and continued family ownership of Black Inc.
The circuit court issued a temporary restraining order on January 8, 2016, preserving the position of all parties under the SRA as of January 7, 2016. A second hearing was held on January 26, 2016, and the resulting order filed March 7, 2016, states that the parties stipulated that Tipton had elected to purchase and would "put up assets or funds as security on March 12, 2016," for the purchase price. Dunklin and Tipton stipulated that they had jointly agreed to an appraiser. The order provided that Black Inc. would make its election or waiver pursuant to the SRA by March 9, 2016, and provision was made for it to provide security on the purchase of the stock if Tipton's purchase was not accomplished. Paragraph 3 of the order states,
Other undecided issues raised in the pleadings of the parties are reserved by the Court. Dunklin, through counsel, specifically reserved his issues raised in the Complaint about any appraisal received by the parties and the methodology employed by the appraisers.
On August 23, 2016, Tipton filed a "Motion for Leave to Conduct Discovery and Obtain Court Approval of Appraisal." Attached was the final appraisal report of SRR rendered on July 22, 2016. Tipton alleged that, even though Dunklin had never accepted the $20,000,000 offer in writing and the offer contained due-diligence provisions *701 and asset-verification provisions that allowed for modification of the amount of the offer, SRR "elected to consider the existence of the offer and afforded it weight in their appraisal." The appraisal report stated that the offer was "arms-length," and the purchasers were considered to have the ability to execute and close on the offer. Based on these conclusions, the ultimate appraisal amount was increased by about $4,300,000.[4] Therefore, Tipton asked that she be permitted to conduct formal discovery into the financial ability of Winemiller and Bogard to complete the transaction and into the prior course of any dealings Dunklin had with them. Black Inc. responded that Tipton should be allowed to inquire into the "factors underlying the conclusions reached by the appraiser."
Dunklin filed a status update on August 24, 2016, in anticipation of the status hearing set for August 26. He alleged that the hearing had not been requested by him for the purpose of challenging the appraisal. He stated that he and Tipton had stipulated that they had jointly selected SRR to perform the appraisal "in accordance with the terms of the SRA." He alleged that SRR's final report had been issued and that it was time for the sale to close. Dunklin relied heavily on the stipulation as presented in the circuit court's order of March 7, 2016. He contended that Tipton refused to close and that she sought to delay the closing based on her dissatisfaction with the results of the valuation.
Dunklin also reported that Black Inc. had exercised its preemptive rights under the SRA to purchase Dunklin's nonvoting shares in the event that they were not purchased by Tipton. He asked that Tipton be ordered to either close on or before August 31, 2016, or give notice that she would not close. Dunklin asked that Black Inc. be ordered to close by September 7, 2016, if Tipton failed to close. Black Inc. responded to Dunklin's status update and stated affirmatively that "the appraisal failed to comply with the [SRA] and failed to comply with requirements of the appraisal itself so that such should be construed by the Court, particularly as it related to any purchase by Black Inc."
The circuit court held a hearing on August 26, 2016, and at its conclusion, the circuit court ruled from the bench as follows:
The parties, Mr. Dunklin and Mrs. Tipton in accord with the [SRA] and as affirmed in the Court's order of March 1, 2016, jointly selected SRR to perform the [FMV] appraisal of the stock.
The appraisal process by SRR went through three drafts. Beginning with the first on February 23, 2016. A second on June 11, 2016. And the third and final draft on July 22, 2016. The fair market evaluation reached by SRR in its final-in its final appraisal was $15,619,240.00.... The weight assigned with respect to the Bogard/Winemiller offer increased the value by some $4 million dollars. As noted previously, Mrs. Tipton's position is that SRR gave too much weight to the Bogard/Winemiller offer in that the firm failed to fully explore the financial ability of the ... offerors to complete the purchase and whether the transaction was in fact an arm's-length transaction.
During the appraisal process the parties were given opportunities to submit information ... to be considered by SRR to consider the evaluation or the validity of the Bogard/Winemiller offer. By jointly agreeing to have SRR perform *702 the final market value of the stock, I believe that it can be said that Mrs. ... Tipton agreed certainly by implication at the very least that SRR would perform the appraisal in a fair, professional, and thorough manner.
It is argued today that SRR accepted Mr. Bogard's representations concerning the validity of the Bogard/Winemiller offer. But I do think that by agreeing to SRR, the parties rely on SRR to give full and studied consideration to all factors touching on the issue of the evaluation of the stock and the Court must assume that is in fact what SRR did.
The issue, I think, in this case comes down to and is controlled by the [SRA]. The parties chose how they wish to proceed. That is, by agreeing that the appraisal should ... be done by SRR to decide the value. There is no provision in the agreement regarding what should happen if the parties didn't agree on the appraisal reached by the appraiser jointly agreed to. I think that the parties are bound under the circumstances and given the totality of how this case has proceeded by the conclusion reached by SRR and its appraisal. I can foresee that if discovery was permitted at this point to go behind or beyond the SRR appraisal that would be giving or just about guarantee further hearings on the details or the methodology of ... SRR and the factors considered by SRR and will eventually require the Court to more or less determine the value of the stock. Which is exactly the primary purpose that a stock repurchase is signed in the first place. That is to rightfully seek to avoid court intrusion into the evaluation process. And as I said, while I can appreciate the positions of all parties and I make this decision and I particularly understand the effect this appraisal will have on the estate tax values down the line, but the effect of this decision on the estate tax considerations is, in this Court's judgment, not relevant to the Court's decision in this particular case.
In conclusion, the Court finds that the SRR appraisal amount of $15,619,240 should stand as the [FMV] of the stock and the amount Mrs. Tipton should pay to Mr. Dunklin for his 5160 shares of stock. Accordingly, Mrs. Tipton's motion for discovery is denied. All that said I'm going to allow some leeway in the closing date of the transaction and rule that the closing in this transaction should be completed no later than close of business on September 15, 2016.
At a hearing held on September 12, 2016, the circuit court noted that Tipton and Black Inc. had objected to the proposed order submitted by Dunklin's attorney from the August 26, 2016 hearing. By order filed September 13, 2016, the circuit court affirmed its bench opinion of August 26, 2016; confirmed the FMV of Dunklin's nonvoting shares to be $15,619,240; ordered Tipton to complete her purchase of those shares by September 15, 2016, or to notify Dunklin and the circuit court in writing that she waived her right; found that Lester A. McKinley, Georgea McKinley Greaves, Mary Jennings, Warren Jennings, Jr., and Jean Johnston had waived their rights to purchase Dunklin's shares; preserved Black Inc.'s right to purchase Dunklin's shares if Tipton waived her right; denied Tipton's motion to conduct discovery; denied Tipton's request for Ark. R. Civ. P. 54(b) certification; terminated Bogard's and Winemiller's interests in the proceeding; and retained jurisdiction to carry out the terms of the order. In an amended order filed September 30, 2016, the circuit court found that, despite its denial of Tipton's request for a Rule 54(b) certificate, all pending claims had been resolved and the order should be considered final.
*703 In a second order filed on September 30, 2016, entitled "Final Order," the circuit court found that Tipton had completed the purchase of Dunklin's 5160 shares of nonvoting stock in Black Inc. for $15,619,240. The circuit court found that Tipton's purchase rendered moot the contingent provisions for the purchase of the shares by Black Inc. and that all the parties' claims had been fully and finally resolved. Black Inc. and Tipton filed separate notices of appeal, and this appeal followed.
II. Standard of Review
The standard of review on appeal from a bench trial is that we conduct a de novo review and reverse only if the circuit court's findings of fact are clearly erroneous or clearly against the preponderance of the evidence. Wesleyan Corp. v. Anderson Elec. of Pine Bluff, Inc. , 2013 Ark. App. 121, at 4-5, 2013 WL 625046. A finding is clearly erroneous when, although there is evidence to support it, we are left with a distinct and firm conviction that a mistake has been committed. Id. Disputed facts and determinations of credibility are within the province of the fact-finder. Id.
III. Reaching the Arguments on Appeal
A. Preservation of Tipton's Argument on Specific FMV
Before we can reach the merits, we must first consider Dunklin's arguments that Tipton and Black Inc. are precluded from their appeals. Dunklin argues that the issue of the specific FMV ($15,619,240 versus $15,600,000) is not preserved for appellate review. We agree that Tipton did not object at the first opportunity when the circuit court made its finding that the FMV was $15,619,240. The circuit court stated this amount in the August 26, 2016 hearing and again at the September 12, 2016 hearing. No objections were made; thus, the issue is not preserved for appellate review because objections were not made and the circuit court was given no opportunity to rule on that issue. Madden v. Aldrich , 346 Ark. 405, 58 S.W.3d 342 (2001) ; Blair v. Willis , 2017 Ark. App. 324, 521 S.W.3d 535.
B. Mootness of Tipton's Appeal
Dunklin argues that Tipton's appeal is moot because the purchase has been completed and she did not request a supersede as bond. Citing City of Little Rock v. Circuit Court of Pulaski County , 2017 Ark. 219, 521 S.W.3d 113, Dunklin argues that Tipton chose to pay the appraised value on September 15, 2016, and purchased all his shares pursuant to the SRA; thus, he contends that her appeal is moot. In City of Little Rock , our supreme court relied on the City's failure to request a supersedeas bond pending the appeal and determined that the City voluntarily paid the penalty, rendering its appeal moot. Id. at 4-5, 521 S.W.3d at 116. Dunklin argues that Tipton paid the appraised value and never requested a supersedeas bond pending an appeal.
As a general rule, appellate courts of this state will not review issues that are moot. Warren Wholesale Co., Inc. v. McLane Co., Inc. , 374 Ark. 171, 286 S.W.3d 709 (2008). To do so would be to render advisory opinions, which this court will not do. Id. A case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. Id.
In Lytle v. Citizens Bank of Batesville , 4 Ark. App. 294, 630 S.W.2d 546 (1982), this court wrote the following:
We adopt the majority rule as the better reasoned rule. Thus, if appellant's payment was voluntary, then the case is moot, but if the payment was involuntary, this appeal is not precluded. In applying this rule to the facts at bar, we *704 must determine whether the payment made by appellant was voluntary or involuntary. In doing so, we believe that one of the most important factors to be considered is whether appellant was able to post a supersedeas bond at the time he satisfied the judgment.
Lytle , 4 Ark. App. at 297, 630 S.W.2d at 547 ; see also Sherman Waterproofing, Inc. v. Darragh Co. , 81 Ark. App. 74, 98 S.W.3d 446 (2003) ; Hendrix v. Winter , 70 Ark. App. 229, 16 S.W.3d 272 (2000) ; Smith v. Smith , 51 Ark. App. 20, 907 S.W.2d 755 (1995) ; DeHaven v. T & D Dev., Inc. , 50 Ark. App. 193, 901 S.W.2d 30 (1995).
Citing the majority rule settled in Lytle , this court analyzed the voluntariness of the satisfaction of a judgment and determined as follows:
Based on the majority rule, we dismissed the appeal [in Lytle ] because there was no evidence in the record that showed that the appellant requested the court to set the amount of a supersedeas bond or that showed his financial inability to pay such cost. Id. at 297, 630 S.W.2d at 547. To the contrary, the record demonstrated that the appellant could pay such costs in that he was able to borrow money to pay the judgment in full when faced with the threat of execution of the judgment. Id. , 630 S.W.2d at 547. We stated, "[f]or whatever reasons, appellant simply chose to forgo his right to request a bond in an effort to stay the circuit court's judgment and any subsequent proceedings to enforce it." Id. at 298, 630 S.W.2d at 547. Therefore, we held that the appellant's payment was voluntary and dismissed the appeal as moot. Id. , 630 S.W.2d at 548.
HomeBank, relying upon Lytle , contends that Hubbard's appeal should also be dismissed. It argues that, as in Lytle , there is no evidence in the record that Hubbard sought to stay HomeBank's execution of its judgment by seeking a stay or by requesting a supersedeas bond. We agree that Hubbard did not seek to stay the judgment or request a supersedeas bond, but we disagree that these facts are dispositive.
Instead, we liken the instant case to Reynolds Health Care Servs. v. HMNH, Inc. , 364 Ark. 168, 217 S.W.3d 797 (2005) and Ward v. Williams , 354 Ark. 168, 118 S.W.3d 513 (2003). In Reynolds Health Care and Ward , after judgments were entered against the appellants, they appealed; however, they failed to post supersedeas bonds, and the judgments were satisfied. Reynolds Health Care Servs. , 364 Ark. at 181-82, 217 S.W.3d at 808-09 (judgment was satisfied when the sheriff levied on and later sold the appellant's property); Ward , 354 Ark. at 175, 118 S.W.3d at 517 (circuit court entered order vesting title to appellee in fee simple absolute). In both cases, the appellees claimed that the appellants' appeals were moot because the judgments were satisfied. The supreme court rejected the appellees' arguments, holding that the judgments were not satisfied voluntarily by the appellants. Reynolds Health Care Servs. , 364 Ark. at 182, 217 S.W.3d at 809 ; Ward , 354 Ark. at 182, 118 S.W.3d at 521. The court in these cases, both decided after Lytle , acknowledged that no supersedeas bond was filed by either appellant. Reynolds Health Care Servs. , 364 Ark. at 182, 217 S.W.3d at 809 (stating that " 'one of the most important factors to be considered' in determining whether a judgment was satisfied voluntarily is whether a supersedeas bond has been filed"); Ward , 354 Ark. at 182, 118 S.W.3d at 521. However, the voluntariness of the payment remains a factor to be considered. As stated by the Reynolds Health Care court, "the court must still consider as an additional factor the fact that the judgment *705 was only satisfied as the result of the sheriff's levying a writ of execution on [the appellant's] property." Id. , 217 S.W.3d at 809.
In the case at bar, Hubbard did not voluntarily pay money to HomeBank to satisfy the judgment. Unlike the appellant in Lytle , Hubbard did not borrow money to pay the judgment. Rather, HomeBank, without notice and authorization, transferred funds out of Hubbard's account. This action was more akin to the involuntary satisfaction of judgments that occurred in Reynolds Health Care and Ward . Because we hold that Hubbard did not voluntarily satisfy the judgment in this case, we deny HomeBank's motion to dismiss Hubbard's appeal.
Hubbard v. HomeBank of Ark. , 2011 Ark. App. 183, at 4-6, 382 S.W.3d 721, 724-25.
Based on caselaw, Tipton contends that her payment was involuntary, and we agree. Tipton was ordered to complete her purchase by September 15, 2016, or to notify Dunklin and the circuit court in writing that she waived her right. Thus, if she did not purchase by the deadline, her right would be waived. Her request for a Rule 54(b) certificate was rejected. The circuit court did not enter a final, appealable order until September 30, 2016. Accordingly, when she purchased the stock pursuant to the circuit court's order on September 15, 2016, she could not have obtained a supersedeas bond because there was no final order, and bond may be given "at or after the time of filing the notice of appeal." Ark. R. Civ. P. 62 (2016).
We hold that Tipton's purchase was involuntary in the same way that payment was involuntary in Ward , supra , in which our supreme court stated, "Nevertheless, we do not believe that the absence of a supersedeas bond and the granting of the land to Williams as part and parcel to execution on a judgment nullifies an appeal from that underlying judgment." Here, Tipton would have lost her option to purchase the stock had she refused to do so by September 15, 2016. Accordingly, her purchase of the stock does not nullify her appeal of the circuit court's declaratory judgment.
C. Mootness of Black Inc.'s Appeal
Dunklin claims that Black Inc.'s appeal is also moot because its only role was a contingent right to elect to buy the shares if Tipton did not. Because Tipton bought the shares, Dunklin argues that Black Inc. has no viable appealable issues. Sherman Waterproofing , supra (a case becomes moot when any judgment rendered would have no practical legal effect on an existing legal controversy). Dunklin also points to Black Inc.'s counsel's statement that the transaction between Tipton and Dunklin did not "involve my clients," and "I'm moot if this goes through," referring to Tipton's purchase of the stock.
Black Inc. argues that its appeal is not moot because this case involves the lower court's acceptance of an appraisal, the result of which is a detrimental effect on the rights of all remaining shareholders for years to come. We agree. A ruling on the merits will have the practical legal effect of determining what actions may or may not be taken by the shareholders with respect to the appraisal. Campbell v. State , 300 Ark. 570, 781 S.W.2d 14 (1989) (stating that when the case involves the public interest, or tends to become moot before litigation can run its course, or a decision might avert future litigation, the supreme court has, with some regularity, refused to permit mootness to become the determinant).
D. Advisory Opinion and Lack-of-Standing Argument
Dunklin claims that Black Inc. is seeking an advisory opinion in its appeal because it *706 has no standing. He argues that Black Inc. was not a party to the sale, and it did not purchase the shares. Because Tipton exercised her right, Dunklin contends that Black Inc. is asking this court for an advisory opinion about academic questions. Sanders v. Neuse , 320 Ark. 547, 898 S.W.2d 43 (1995) ; Dougan v. Gray , 318 Ark. 6, 884 S.W.2d 239 (1994). For the same reasons, Dunklin contends that Black Inc. has no standing. Walker v. Ark. State Bd. of Educ. , 2010 Ark. 277, 365 S.W.3d 899 (standing is a matter of law for appellate courts to decide and review de novo).
We disagree and hold that Black Inc. has standing as a party to the lawsuit. In Forrest Constr., Inc. v. Milam , 345 Ark. 1, 43 S.W.3d 140 (2001), the Arkansas Supreme Court held that a party has standing to appeal if the circuit court's order has impaired its economic interests. Black Inc. remains an interested party under the SRA because its economic interest has been impaired by the lower court's decision and all subsequent sales of its shares will be directly affected by the value determined under the appraisal.
E. Waiver and Estoppel
Dunklin contends that the issues raised by Tipton are precluded by the doctrines of waiver and estoppel. He points to her arguments raised at the hearings-that she would pay the sum for his stock as soon as the appraisal amount was received. Her counsel stated that once the appraiser was jointly agreed on, the circuit court had no "question of fact whatsoever then." Tipton's counsel also stated that the parties did not have the right to "dictate how an appraisal should be made. We think the appraiser is in charge of that and however he elects to do it, both parties are bound by it." Thus, Dunklin contends that Tipton has waived her rights to object to the appraisal and was estopped to belatedly attempt to conduct discovery. See Shepherd v. State Auto Prop. & Cas. Ins. Co. , 312 Ark. 502, 850 S.W.2d 324 (1993) ; Anderson v. Anderson , 223 Ark. 571, 267 S.W.2d 316 (1954) ; Taylor v. Hamilton , 90 Ark. App. 235, 205 S.W.3d 149 (2005).
However, Tipton filed a motion seeking leave to conduct discovery, obtained an order of the circuit court denying that motion, and filed a notice of appeal from that order. Nothing more was required. See Bayer CropScience LP v. Schafer , 2011 Ark. 518, at 14 n.5, 385 S.W.3d 822, 831 n.5. Further, estoppel rests upon deliberate action by the party estopped that induces reliance by the other party. Anderson, supra. The March 7, 2016 order reserves "other undecided issues raised in the pleadings of the parties," and Tipton's counterclaim included a request to ascertain "the appropriate procedure to be followed in appraising [FMV]." Therefore, Tipton did not waive her right to object to the appraisal and was not estopped from requesting discovery.
IV. Denial of Discovery Motion
The circuit court has wide discretion in matters pertaining to discovery, and its decision will not be reversed absent an abuse of discretion that is prejudicial to the appealing party. Banks v. Jackson , 312 Ark. 232, 848 S.W.2d 408 (1993). An abuse of discretion may be found when there was an undue limitation of the appellant's substantial rights under the prevailing circumstances. Dodson v. Allstate Ins. Co. , 345 Ark. 430, 47 S.W.3d 866 (2001).
Tipton argues that the circuit court erred by denying her permission to conduct discovery to confirm the validity of the assumptions made in the appraisal, i.e., that it was an arms-length offer and that the third-party purchasers had the financial ability to pay the offered amount. Tipton states that these assumptions made by the appraiser were not based on information *707 obtained from the prospective purchasers. Instead, she claims that the assumptions were based on conversations with Dunklin, Tipton, their attorneys, and the president of Black Inc. She argues that the appraiser had no means to compel the prospective purchasers to prove information that would confirm their relationship to Dunklin and their financial wherewithal.
Tipton contends that the circuit court apparently accepted Dunklin's argument that she had waited too long to raise the issue. However, she argues that she did not know prior to the final appraisal report that the appraisal would assume the validity of the $20,000,000 offer without deeper investigation. The final appraisal report does not reflect that the appraiser spoke with Bogard or Winemiller. Tipton contends that she did not know that the final appraisal would ultimately rest on "completely unfounded assumptions about the prospective purchasers" until she received it. Once she knew, she sought leave to conduct discovery.
She argues that permitting discovery would not have posed any harm to Dunklin. She had already placed sufficient funds into restricted accounts to secure the purchase of shares, and Black Inc. was poised to exercise its option should Tipton not execute the purchase. Therefore, she contends that the small amount of time needed for discovery would have been brief, and Dunklin faced no harm. On the other hand, she contends that she faced considerable harm from the unfounded assumptions playing such a central role in the appraisal. The inclusion of the offer increased the FMV by $4,300,000. Thus, she claims that the circuit court abused its discretion when it denied her motion to conduct discovery because she was prejudiced by not having the chance to determine whether the appraisal's assumptions were accurate.
However, we agree with Dunklin's contention that the circuit court properly denied Tipton's motion for discovery. The circuit court considered that Tipton had received a draft of the appraisal via email on February 23, 2016, and that draft included the exact weighting of the third-party offer as was included in the final report dated July 22, 2016. The March 7, 2016 order contains the stipulation that Dunklin and Tipton had agreed on an appraiser and that the SRA provided that the FMV would be determined by an appraiser selected jointly. That is what occurred, and Tipton stipulated to it in the March 7, 2016 order.
The circuit court analyzed the issues and concluded that there was no issue of fact, the appraisal issue was determined by the SRA and the stipulation between Tipton and Dunklin, and there was no valid reason or basis for discovery at the late August date. The circuit court was correct in stating that granting the discovery would require the court eventually to determine the value of the stock and that the SRA was signed to avoid that circumstance. Thus, we hold that there was no abuse of discretion in denying Tipton's discovery motion.
V. SRA
The first rule of interpretation of a contract is to give the language employed the meaning that the parties intended. Singletary v. Singletary , 2013 Ark. 506, 431 S.W.3d 234. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. Id. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. Id.
*708 It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement. Id.
Black Inc. argues that the circuit court erred in its interpretation of the SRA and its acceptance of the appraised value. Black Inc. refers to the SRA's provision regarding the definition of FMV, which states in relevant part:
1.1 Definitions:
(b) Except as set forth in Article 5.2, "Fair Market Value" shall be determined, as of the Valuation Date, by mutual agreement of the selling Shareholder and the purchaser(s). If the selling Shareholder and the purchaser(s) are unable to unanimously agree upon [FMV], [FMV] shall be determined by an appraiser selected jointly by the selling Shareholder and the purchaser(s).
Black Inc. contends that there are no provisions in the SRA regarding what should happen if the parties disagree on the appraisal reached by the appraiser jointly agreed to by the selling shareholder and purchaser. It contends that the SRA did not intend for an outside offer to be given weight in determination of FMV.
No one argued at trial that the SRA was ambiguous regarding a determination of FMV. When a contract is free of ambiguity, its construction and legal effect are questions of law for the court. Crittenden Cty. v. Davis , 2013 Ark. App. 655, 430 S.W.3d 172. Black Inc. claims that the SRA was silent regarding a conflict based on the appraisal for FMV. The parol-evidence rule is a rule of substantive law in which all antecedent proposals and negotiations are merged into the written contract and cannot be added to or varied by parol evidence. Simpson v. Braden , 2011 Ark. App. 250, 2011 WL 1166848. Such evidence is inadmissible if it tends to alter, vary, or contradict the written contract but is admissible if it tends to prove a part of the contract about which the written contract is silent. Id. We will not reverse a circuit court's ruling allowing or disallowing evidence on the basis of the parol-evidence rule absent an abuse of discretion. Armstrong Remodeling & Constr., LLC v. Cardenas , 2012 Ark. App. 387, 417 S.W.3d 748.
Black Inc. contends that additional evidence regarding the methodology employed by SRR would have been admissible and essential to determine the validity of SRR's assumptions. The circuit court interpreted the SRA to mean that the choice of appraisal method employed by the selling shareholder and the purchasing party was binding as to the appraised value. Black Inc. claims that the circuit court's interpretation was error and that the circuit court should have allowed discovery and evidence as to the underlying factors that contributed to the determination of the FMV.
Dunklin argues that the circuit court correctly analyzed the SRA and accepted the stipulated appraised value because it was controlled by the SRA, the parties chose how they wished to proceed, they agreed on the appraiser and the process, and the SRA states the FMV will be determined by the agreed upon appraiser. The circuit court noted that by signing the SRA, the parties avoided the circuit court determining the value of the stock. We hold that even though the SRA did not provide for the parties' disagreement over the FMV, it was not an abuse of discretion to disallow parol evidence considering that the context of the SRA was to avoid a court's determination of FMV.
VI. Appraisal
Tipton argues that based on the appraisal's own terms, the circuit court erred by adopting the appraisal's conclusions as to *709 FMV without confirming that the offer came from legitimate arms-length purchasers with the financial ability to execute and close on the offer. She contends that the appraisal's consideration of the offer as part of the valuation process was premised on the offer being "arms-length" by an "unrelated third party" with "financial ability to execute and close on the offer." She urges that, without confirmation of the arms-length transaction with purchasers who had the financial ability to conclude the purchase, the appraisal fails because the appraiser did not know if either consideration was true. Tipton argues that under these circumstances, the appraisal's consideration of the offer is a fiction, and the circuit court clearly erred by adopting and enforcing the appraisal. Black Inc.'s arguments mirror those set forth by Tipton, adding that the offer was contingent on due diligence and had expired at the time of the appraisal. Therefore, Black Inc. claims that SRR's consideration of the offer in its appraisal was an error because the offered price was purely speculative and would likely not have remained the same after due diligence. Olson v. United States , 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934).
These arguments do not take into consideration the controlling aspect of the SRA. In section IV, we held that the circuit court did not abuse its discretion in denying Tipton's request for discovery related to SRR's appraisal, which was based on the assumptions about which Tipton and Black Inc. complain. The circuit court reasoned as follows:
[B]y agreeing to SRR, the parties rely on SRR to give full and studied consideration to all factors touching on the issue of the evaluation of the stock and the Court must assume that in fact what SRR did.
The issue, I think, in this case comes down to and is controlled by the [SRA]. The parties chose how they wish to proceed. That is, by agreeing that the appraisal should done by SRR to decide the value. There is no provision in the agreement regarding what should happen if the parties didn't agree on the appraisal reached by the appraiser jointly agreed to. I think that the parties are bound under the circumstances and given the totality of how this case has proceeded by the conclusion reached by SRR and its appraisal. I can foresee that if discovery was permitted at this point to go behind or beyond the SRR appraisal that would be giving or just about guarantee further hearings on the details or the methodology of SRR and the factors considered by SRR and will eventually require the Court to more or less determine the value of the stock. Which is exactly the primary purpose that a stock repurchase is signed in the first place. That is to rightfully seek to avoid court intrusion into the evaluation process. And as I said, while I can appreciate the positions of all parties and I make this decision and I particularly understand the effect this appraisal will have on the estate tax values down the line, but the effect of this decision on the estate tax considerations is, in this Court's judgment, not relevant to the Court's decision in this particular case.
The circuit court interpreted the SRA to mean that the choice of appraisal method employed by the selling shareholder and the purchasing party were binding as to the appraised value. We hold that in so doing, the circuit court's acceptance of the appraisal was not clearly erroneous.
Affirmed.
Vaught and Murphy, JJ., agree.

The shareholders of Black Inc. at the time of the filing of Dunklin's complaint were the Hattie Boone Black Testamentary GST Exempt Trust, Deborah Dunklin Tipton, Lester Asher McKinley, Georgea Boone McKinley Greaves, Mary McKinley Jennings, Warren Jennings, Jr., Jean Johnston, and George H. Dunklin, Jr.

The SRA defines "Dunklin Shareholders" to mean Dunklin, Tipton, any of their lineal descendants, and the trustee of any trust for the sole benefit of the foregoing persons and/or their spouses. The SRA provides that Dunklin's lineal descendants had sixty days to exercise their option to buy. Further, the SRA states:
(ii) Next, for a period of thirty (30) days following the expiration of the sixty (60) day period set forth ... above, the other Dunklin Shareholders shall have the option to purchase any Shares not purchased pursuant to [those shares offered first to Dunklin's lineal descendants].

If the parties could not agree on an appraiser, then each would select an appraiser, and the selected appraisers would select a third appraiser to conduct the FMV determination.

The average of $11,238,480 (FMV) and the offer of $20,000,000 was found to be $15,619,240. Therefore, the difference between $11,238,480 and $15,619,240 is $4,380,760.